## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**RODNEY LEE SPILLERS, as**
**Personal Representative of the Estate**
**of Jeffrey Ryan Spillers**

|  |  |
|---|---|
| **Plaintiff,** | **CIVIL ACTION NO. 13-CV-13501** |
| **vs.** | **DISTRICT JUDGE PAUL D. BORMAN** |
| | **MAGISTRATE JUDGE MONA K. MAJZOUB** |

**United States of America,**

        **Defendant.**

_____/

## REPORT AND RECOMMENDATION

Pending before the Court is Defendant's Motion to Dismiss for lack of subject matter jurisdiction. (Docket no. 6.) Plaintiff filed a Response (docket no. 11), and Defendant filed a Reply (docket no. 14). The Motion has been referred to the undersigned for consideration. (Docket no. 9.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2), and issues this Report and Recommendation.

## I.      Recommendation

For the reasons that follow, the undersigned recommends granting Defendant's Motion to Dismiss [6] and dismissing this case in its entirety.

## II.     Report

### A.      Facts

Plaintiff filed his Complaint on August 15, 2013, under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), alleging that Defendant, through the U.S. Department of Veteran Affairs (VA),

committed negligence and medical malpractice in violation of the Michigan Wrongful Death Act, M.C.L. § 600.2921.  (Docket no. 1.)  Plaintiff seeks up to $9,000,000.00 in damages for expenses; pain and suffering; loss of society, companionship, friendship, love, and affection; and other consequential damages.  (*Id.* at 10.)

Plaintiff alleges that in or about October 2005,[1] Decedent, Jeffrey Spillers, sought treatment with the VA for headaches, balance difficulties, seizures, loss of vision, visual disturbances, depression, fatigue, nystagmus, and facial droop.  (*Id.* ¶¶ 16-17.)  Decedent was treated by the VA for his symptoms, but he was not given an MRI or a CT scan until August 2009, when he was ultimately diagnosed with brain cancer.  (*See id.* ¶ 18-24.)

Decedent was admitted to the John Dingell VA Medical Center on August 11, 2009, and was transferred to the Ann Arbor VA Medical Center on August 12, 2009, where he stayed through September 3, 2009, when he was transferred to Community Living Center.  (Docket no. 11 at 10-11.)  On October 23, 2009, Decedent was discharged and returned home for hospice care; he passed away from his disease on December 15, 2009.  (*Id.* at 11.)

Several months after Decedent's death, Plaintiff contacted an attorney who reviewed Decedent's medical records along with a medical expert.  (*Id.* at 12.)  Plaintiff then decided to pursue his claim against Defendant and filed his administrative claim with the VA on December 14, 2011.  (*Id.*)  The VA denied Plaintiff's claim on February 19, 2013, and Plaintiff filed his instant suit on August 15, 2013.  (*Id.*)  Defendant moves to dismiss under Federal Rule of Civil Procedure 12(b)(1), asserting that Plaintiff failed to filed his administrative claims within the two year statute

---

[1]In his Response to Defendant's Motion, Plaintiff states that the Decedent "resumed primary care treatment through the [VA]" in September 2008.  (*See* docket no. 11 at 7.)

of limitations provided by the FTCA.  (*See* docket no. 6.)

**B.     Standard of review**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction by attacking the claim on its face, in which case all factual allegations of the Plaintiff must be considered as true, or by attacking the factual basis for jurisdiction.  *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004).  If the factual basis for jurisdiction is challenged, the court must weigh the evidence, and the plaintiff bears the burden of proving jurisdiction.  *Id.*

**C.     Analysis**

The FTCA provides a limited waiver of sovereign immunity for plaintiffs seeking to pursue tort claims against the United States.  *See Smith v. United States*, 507 U.S. 197, 203 (1993) (citation omitted).  Under 28 U.S.C. § 2675(a) a tort claim may not be instituted against the United States for money damages "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail."  Because the FTCA constitutes a limited waiver of sovereign immunity, a prospective plaintiff must strictly adhere to the statute's procedural requirements. *Blakely v. United States*, 276 F.3d 853, 864–65 (6th Cir. 2002) (explaining that the circumstances of the waiver of sovereign immunity must be "scrupulously observed").  Thus, Pursuant to 28 U.S.C. § 2401, a tort claim against the United States "shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing . . . of notice of final denial of the claim by the agency to which it was presented."  28 U.S.C. § 2401(b).  A prospective plaintiff must satisfy both requirements of Section 2401(b). *Ellison v. U.S.*, 531 F.3d 359, 361-62 (6th Cir. 2008) (holding that

Section 2401(b) is a two-part requirement despite Congress's confusing use of the disjunctive "or" in drafting the statute).

The Parties agree that Plaintiff satisfied the second requirement of Section 2401 and filed his claim within six months of receiving the VA's notice of denial.  (*See* docket no. 6 at 13.)  But Defendant asserts that when Plaintiff submitted his claim to the VA on December 14, 2011, one day before the two-year anniversary of Decedent's death, Plaintiff's submission fell outside of the two-year statute of limitations because his claim accrued in or about August 2009.  (*Id.* at 16.)  Plaintiff asserts that his claim did not accrue for purposes of Section 2014 until Decedent passed away "or more likely several months after his death when medical records were reviewed."  (Docket no. 11 at 13.)

The Parties also agree that Section 2401(b) is silent with regard to when a claim accrues and that in the context of a medical-malpractice claim where the ultimate result is the death of the patient, a claim can accrue before, at, or after death.  (*See* docket no. 11 at 16; docket no. 14 (both discussing *Chomic v. United States*, 377 F.3d 607 (6th Cir. 2004); *Amburgey v. United States*, 733 F.3d 633 (6th Cir. 2013); and *Garret v. United States*, 640 F.2d 24 (6th Cir. 1981)).)  And they agree that such claims accrue "when a plaintiff knows of both the existence and the cause of the injury." (*See* docket no. 6 at 18; docket no. 11 at 16 (both citing *United States v. Kubrick*, 444 U.S. 111, 117-18 (1979)).)  Defendant asserts that Plaintiff's claim accrued when Decedent learned of his brain cancer in August of 2009 because he knew at the time of his diagnosis (or at least shortly thereafter) that the VA doctors had missed the diagnosis earlier because they failed to give him an MRI or a CT scan.  (*See* docket no. 6 at 18-20.)  Defendant further argues that even if Plaintiff's claim did not accrue at the time of his diagnosis, Decedent "clearly knew of the existence and cause of his alleged

4

injuries" during the time he was hospitalized from August 2009 through the time of his death. (*Id.*) Plaintiff contends that Defendant misinterprets Plaintiff's claim in that Plaintiff does not allege that the VA doctors *caused* Decedent's brain cancer; instead, Plaintiff alleges that the VA doctor's failure to diagnose Decedent's condition caused him additional pain and suffering. (Docket no. 11 at 23-24.) Thus, Plaintiff asserts, because Plaintiff was unaware of the extent to which Decedent's quality of life was affected until at least the time of his death, Plaintiff's claim did not accrue until at least that time. (*Id.*) Moreover, Plaintiff argues, Plaintiff was unaware that the VA doctors were responsible for Decedent's injuries until he met with an attorney and a medical expert some months later. (*Id.* at 24.)

In support of his contention, Plaintiff relies, in part, on *Augustine v. United States*, 704 F.2d 1074 (9th Cir. 1983). (*See* docket no. 11 at 18-19.) But the court's rationale in *Augustine* supports Defendant's argument. In *Augustine*, the Plaintiff had a bump on his palate that his dentist failed to diagnose as cancerous. Defendant argued that Plaintiff's claim accrued when he became aware of the bump, not when it was ultimately diagnosed as cancer. The court held that Plaintiff's claim accrued at the time "the patient becomes aware of the development of a pre-existing problem into a more serious condition"–that is, when the plaintiff learned that the bump was cancerous. *Augustine*, 704 F.2d at 1078-79. Here, Decedent became aware that his symptoms had developed (or were caused by) brain cancer at the time of his diagnoses. Defendant does not assert that his claim accrued at the time he started showing symptoms.

Plaintiff then turns to the Sixth Circuit's decision in *Amburgey* to support his contention that he was unaware that Defendant may have been responsible for Decedent's alleged injuries until he met with his attorney and a medical expert to review Decedent's medical records. (*See* docket no.

5

11 at 15-16.)  But again, *Amburgey* does not support Plaintiff's contention.  In *Amburgey*, the decedent's death was caused by an allergic reaction to IV contrast dye, but doctors told his family that he had died of natural causes.  The decedent's family found out three months later that the cause of death was an allergic reaction.  Thus, the court found that the plaintiff's claim accrued on the date of the autopsy report because "the plaintiffs [did not know] enough about the cause[] of [the] injury to put them on inquiry notice of a possible legal claim."  *Id.* at 638.  Here, Decedent knew enough about the cause of his injury to at least put him in inquiry notice.

According to Plaintiff's Complaint, During Decedent's time at the VA hospitals following his diagnosis in August 2009, "Decedent had an extremely deteriorated mental status where he was rousable only to noxious stimuli and made very few purposeful movements."  (Docket no. 1 ¶25.) He was receiving oral chemotherapy and palliative radiation, and on October 23, 2009, he was discharged into hospice care.  (*Id.* ¶¶26-27.)  Plaintiff also notes that "Decedent's remaining months of life were of much lower quality than he would have had if he been (sic) properly diagnosed earlier with the disease."  (*Id.* ¶32.)  Thus, even assuming the VA doctors' failure to diagnose Decedent's brain cancer earlier directly caused additional pain and suffering, Decedent was well aware of the nature of his pain and suffering before his death.  Moreover, as Defendant points out, on August 12, 2009, the day after he was diagnosed with brain cancer, Decedent requested "all notes, reports, records, files on record" with regard to his medical care at the VA.  (Docket no. 7-1 at 2.)  As Defendant contends, this request shows that Decedent himself was at least on inquiry notice that he may have a claim against the VA for failure to properly diagnose his condition.

Like the Plaintiff in *Augustine*, whose claim accrued when he learned that his symptoms (the bump in his mouth) were cancerous, and unlike the decedent in *Amburgey*, whose claim accrued

three months after his death when the true cause of death was revealed, Plaintiff's claim accrued when Decedent learned that his symptoms were related to brain cancer, not when Plaintiff met with a lawyer and an expert to determine if the VA doctors had failed to properly treat him. And even accepting Plaintiff's contention that Decedent's pain and suffering are somehow distinguishable from the cancer itself, Plaintiff was aware of the true nature of his condition and his the extent of his injury during his time in the VA hospitals and in hospice care. Therefore, Plaintiff's claim accrued, at the latest, sometime in October or November of 2009. And because Plaintiff did not submit his claim to the VA until December 14, 2011, he failed to do so during the applicable statute of limitations. Defendant's Motion to dismiss should be granted.

### D. Conclusion

For the above-stated reasons, the undersigned recommends granting Defendant's Motion to Dismiss [6]. Therefore, this matter should be dismissed in its entirety.

## III. Notice to Parties Regarding Objections

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2),

a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.  Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: May 5, 2014                    s/ Mona K. Majzoub
                                      MONA K. MAJZOUB
                                      UNITED STATES MAGISTRATE JUDGE


**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.


Dated: May 5, 2014                    s/ Lisa C. Bartlett
                                      Case Manager