UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RODNEY LEE SPILLERS,
as Personal Representative of the
Estate of Jeffrey Ryan Spillers

    Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendant.
_____/

Case No. 13-13501

Paul D. Borman
United States District Judge

Mona K. Majzoub
United States Magistrate Judge

OPINION AND ORDER: DENYING PLAINTIFF'S OBJECTIONS (ECF NO. 16);
ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (ECF
NO.15); AND GRANTING DEFENDANT'S MOTION TO DISMISS (ECF NO. 6)

  Before the Court are Plaintiff Rodney Lee Spillers' ("Plaintiff") Objections to Magistrate Judge Mona K. Majzoub's May 5, 2014 Report and Recommendation in favor of granting Defendant United States of America's ("Defendant") Motion to Dismiss. (Objections, ECF No. 16). The Defendant filed a response to Plaintiff's objections. (ECF No. 17)

  For the reasons stated below, the Court will deny Plaintiff's Objections, adopt the Magistrate Judge's Report and Recommendation, and grant Defendant's Motion to Dismiss.

## I. BACKGROUND

  Plaintiff filed the current complaint in this action on August 15, 2013 pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b). (ECF No. 1). Plaintiff asserts that Defendant, through the United States Department of Veteran's Affairs ("VA"), committed medical malpractice and negligence in violation of Michigan's Wrongful Death Act, Mich. Comp. Laws

§ 600.2921.[1]

Plaintiff alleges that the decedent, Jeffrey Spillers ("Decedent"), was a member of the United States Army who served in Iraq during the first Gulf War. (Compl. ¶ 15; ECF No. 11, Pl.'s Resp. at 3). In September 2008, Decedent began receiving primary care treatment through the Pontiac VA Community-Based Outpatient Clinic ("CBOC") as well as from other VA medical centers in Michigan.[2] (Compl. ¶ 16). Decedent presented at these visits with headaches, balance difficulties, seizures, depression, fatigue, loss of vision, visual disturbances, nystagmus, and a facial droop. (Compl. ¶¶ 16-17). On October 31, 2008, Decedent saw a neurologist who recommended an MRI. (Def.'s Mot., Ex. 4)[3]. However, no MRI was conducted at that time.

---

[1] Plaintiff sets forth three separate claims in his Complaint: medical malpractice, negligence, and a violation of Michigan's Wrongful Death Act. (Compl. ¶¶ 36-52). Defendant argued in its Motion to Dismiss that Plaintiff has actually asserted a single claim for wrongful death pursuant to Michigan's Wrongful Death Act for the reason that "medical malpractice" is merely a type of negligence claim and therefore those two claims are redundant, and further, where a negligence claim based on medical malpractice results in death, that claim "automatically merges into an action that can 'only' be brought under the Wrongful Death Act, MCL §§ 600.2921 & 600.2922." (Def.'s Mot. at 16). Plaintiff acquiesced this point in his response, noting that he "does not dispute the analysis in *Chromic* [*v. United States*, 377 F.3d 607, 611-12 (6th Cir. 2004)] that would conclude the underlying claim in the present case is a derivative claim under Michigan's Wrongful Death Act." (Pl.'s Resp. at 21 n. 4). Therefore, the Court, like the Magistrate Judge, shall treat Plaintiff's complaint as setting forth a claim of negligence and medical malpractice in violation of the Michigan Wrongful Death Act. (*See* ECF No. 15 at 2).

[2] Plaintiff sets forth in his complaint that Decedent sought primary care from various VA medical facilities including the CBOC "[b]eginning in or about 2005" (Compl. ¶ 16). However, Plaintiff clarifies this statement in his response, citing to the medical records attached to Defendant's motion and stating that the Decedent "[i]n September 2008, Mr. Spillers resumed primary care treatment through the [CBOC], after a hiatus of over a decade." (Pl.'s Resp. at 3).

[3] For ease of reference, any exhibit referenced shall refer to the exhibits attached to the Defendant's Motion to Dismiss unless otherwise noted. Further, the Court notes that Defendant's motion is paginated in a confusing manner. For clarity when citing to Defendant's motion, the Court shall cite to the page number assigned by the docketing system rather than the number assigned by Defendant.

Then in December 2008, Decedent again presented to the CBOC for a "re-check" and the medical records made at that time noted that "[h]e is scheduled for a pulmonary function test and a MRI." (Ex. 7). Yet, no MRI was performed at that time.

Over the next six months, Decedent visited the VA optometry clinic and had three more "re-check" visits to CBOC. (Exs. 9, 10). In July 2009, Decedent presented at the emergency room with symptoms of headache, vision changes, and nausea; but an MRI was not performed at that time. (Pl.'s Resp. at 5; Ex. 11). On July 31, 2009, Decedent visited the Detroit VA Medical Center Pain Clinic complaining of poor vision, weakness, misalignment of his eyes, sleepiness, dizziness and other symptoms. (Ex. 14). At this appointment, Decedent and his girlfriend requested a MRI which was then scheduled. (*Id*.).

On August 4, 2009, Decedent received the MRI which revealed "multiple intracranial masses" that resulted in pressure on the right side of his brain and was "highly suggestive" of a brain tumor. (Pl.'s Resp. at 6; Def.'s Br. Ex. 15, at 5).

On August 11, 2009, Decedent, his two brothers, and his girlfriend had a neurology consult. (Ex. 15). During that visit, the neurologist noted Decedent's previous consultation with the neurology department in 2008 and the fact that an MRA and an MRI were ordered at that time, but only the MRA had been performed. (Ex. 15, at 1-2). That same day, Decedent was admitted to the John Dingell VA Medical Center and also sent for a CT scan which confirmed the locations of the brain masses and also noted possible metastsis. (Ex. 16; Compl. ¶ 24). On August 12, 2009, Decedent was transferred to the Ann Arbor VA Medical Center where he remained through September 3, 2009, when he was transferred to the Community Living Center. (*Id*.). On August 12, 2009, the same day he was transferred to the Ann Arbor VA Medical

Center, Decedent personally requested a copy of all of his medical record including "all notes, reports, records, files on record". (Ex. 17). Decedent was supplied with a copy of his records on August 21, 2009. (*Id.*).

During his stay at the Ann Arbor VA Medical Center, Decedent received more testing and a biopsy was performed. (Pl.'s Resp. at 7-8). On August 27, 2009, Decedent was informed that he had anaplastic astrocytoma - brain cancer. (Pl.'s Resp. at 7-8; Ex. 18, 19; Compl. ¶ 23). During a consultation on August 27, 2009, the doctor noted that he "spent a considerable amount of time at this veteran's bedside today discussing the diagnosis, prognosis, and likely therapy; apparently they were under the impression that this veteran had 'benign' disease not requiring surgery." (Ex. 19, at 1). Decedent received radiation, chemotherapy, and physical therapy to treat his brain tumor, but Decedent was not a candidate for surgery. (Ex. 19).

On October 23, 2009, Decedent was discharged and returned home to receive hospice care. (Pl.'s Resp. at 7; Compl. ¶ 27). Decedent passed away from his disease on December 15, 2009. (Pl.'s Resp. at 7; Compl. ¶ 30).

Some months after the Decedent's death, Plaintiff contacted an attorney and thereafter the medical records were reviewed by a medical expert. (Pl.'s Resp. at 8). On December 14, 2011, Plaintiff filed his administrative claim with the VA. (*Id.*). On February 19, 2013, the VA denied Plaintiff's claim by letter. (Ex. 21). Then on August 15, 2013, Plaintiff filed this action "within six (6) months from the date of mailing this determination" as provided by the FTCA, 28 U.S.C. § 2401(b). (*Id.*; ECF No. 1).

Defendant then filed the present Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), claiming that the Court lacks jurisdiction because Plaintiff did not file his

administrative claim within the requisite two year statute of limitations set forth by the FTCA. (ECF. No. 6). The matter was referred to the Magistrate Judge, who issued a Report and Recommendation concluding that the Defendant's motion should be granted. (ECF No. 15). Plaintiff then filed his objections (ECF No. 16) and Defendant thereafter filed a response (ECF No. 17).

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1), the Court conducts a *de novo* review of the portions of the Magistrate Judge's Report and Recommendation to which a party has filed "specific written objections" in a timely manner. *Lyons v. Comm'r Soc. Sec.,* 351 F. Supp. 2d 659, 661 (E.D. Mich. 2004). Only those objections that are specific are entitled to a *de novo* review under the statute. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir.1986). "The parties have the duty to pinpoint those portions of the magistrate's report that the district court must specially consider." *Id*. (internal quotation marks and citation omitted). A general objection, or one that merely restates the arguments previously presented, does not sufficiently identify alleged errors on the part of the magistrate judge. An "objection" that does nothing more than disagree with a magistrate judge's determination, "without explaining the source of the error," is not considered a valid objection. *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Defendant moves to dismiss based on a lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). The United States Court of Appeals for the Sixth Circuit has described motions to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) as falling within two categories:

> A *facial* attack is a challenge to the sufficiency of the pleading itself. On such motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party .... a *factual* attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction. On such a motion, no presumptive truthfulness applies to factual allegations .... And the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.

*United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) (internal citations omitted) (emphasis in original); *see also Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012) (describing the standards). When the challenge is a factual challenge, as it is in this action, "the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004).

### III. ANALYSIS

A.   Federal Tort Claim Act Liability

The Magistrate Judge accurately provided that the FTCA allows a limited waiver of sovereign immunity for plaintiffs seeking to pursue tort claims against the United States. *See Smith v. United States*, 507 U.S. 197, 203 (1993) (citation omitted). Yet, a tort claim cannot be instituted against the United States for money damages "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). Additionally, pursuant to 28 U.S.C. § 2401(b):

> [a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

*Id*. (*see also Blakely v. U.S.*, 276 F.3d 853, 865 (6th Cir. 2002) (holding that "[u]nder the FTCA,

a district court does not have jurisdiction over an action filed pursuant thereto if the plaintiff did not file an administrative claim within th[is] two-year limitations period".). A plaintiff must satisfy *both* timing requirements of § 2401(b). *Ellison v. U.S.*, 531 F.3d 359, 361-62 (6th Cir. 2008) (holding that section 2401(b) provides that plaintiffs must satisfy both deadlines and rejecting the argument that the "or" should be construed as disjunctive because such a construction would allow a plaintiff to avoid any court deadline.).

In the instant case, there is no dispute that Plaintiff met the second filing deadline set forth in § 2401(b) by filing the current action within six months of the mailing of his notice of the VA's final denial of the claim. (Def.'s Mot. at 13). However, Defendant contends that Plaintiff did not meet the first deadline when he submitted his claim to the VA on December 14, 2011 - one day before the two year anniversary of Decedent's death. (*Id.* at 16). Defendant contends that Plaintiff's claim accrued when he became aware of the "existence and the cause of his injury" which occurred by August 11, 2009 when he was informed that the MRI showed a tumor, or on August 27, 2009 when the biopsy confirmed the diagnosis of brain cancer. (Def.'s Mot. at 19-20). Defendant further argues that Decedent's alleged injury of lower quality of life and shorter survival time would have been known to Decedent during his hospitalization from August until September, through his treatment and stay at Community Living Center through October, or at the latest while receiving hospice care in his own home during November, 2009. (*Id.*). Plaintiff, on the other hand, contends that Decedent's claim did not accrue until the day Decedent passed away, December 15, 2009, or "more likely several month after his death when medical records were reviewed". (Pl.'s Resp. at 9).

The parties agree that § 2401(b) is silent as to when a claim accrues and that "in the

7

context off a medical-malpractice claim where the ultimate result is the death of a patient, a claim can accrue before, at, or after death." (ECF No. 15 at 4, citing *Amburgey v. United States*, 733 F.3d 633 (6th Cir. 2013) (FTCA claim accrued after death); *Chomic v. United States*, 377 F.3d 607 (6th Cir. 2004) (FTCA claim accrued before death); *Garrett v. United States*, 640 F.2d 24 (6th Cir. 1981) (FTCA claim accrued at the time of death)). Plaintiff and Defendant also agree that in the context of the FTCA, a wrongful death claim accrues "when a plaintiff knows of both the existence and the cause of the injury." (Def.'s Mot. at 18; Pl.'s Obj. at 6 (both citing to *United States v. Kubrick*, 444 U.S. 111, 117-18 (1979) (setting forth the inquiry notice rule); *see also Chomic*, 377 F.3d at 612 (examining whether a derivative claim for wrongful death can accrue before death, and finding that the *Kubrick* inquiry-notice standard applied and therefore the claim accrued on the date of the injury and not the later date of death.). This standard is known as the "inquiry-notice rule" rather than a "discovery rule (in the sense of discovering the existence of a claim)." *Hertz v. United States*, 560 F.3d 616, 618 (6th Cir. 2009).

B.  Objection 1

Plaintiff's first objection is set forth in multiple sub-parts but all parts relate to Plaintiff's more general objection that the Magistrate Judge's Report and Recommendation improperly applied *Kubrick's* inquiry-notice rule to the facts of this action and erroneously determined that Decedent's claim accrued prior to his death on December 15, 2009 - at the earliest in August 2009 and at the latest in November 2009.

1.  Knowledge of "Symptoms" versus Knowledge of the "Cause of an Injury"

First, Plaintiff argues that the Magistrate Judge erred in applying the *Kubrick* inquiry-notice rule when she concluded "Decedent became aware that his symptoms had developed (or

were caused by) brain cancer at the time of his diagnoses". (ECF No. 15 at 5). Plaintiff argues that the Magistrate Judge erred by equating Decedent's "symptoms" with his "injury". Plaintiff contends that Decedent's symptoms were known to him when he was correctly diagnosed but that Decedent's injury in this case was not the symptoms that "all cancer patient[s] would exhibit" to some decree, but rather "the increased amount of pain and suffering and diminished quality of life Decedent suffered as a result of the untimely diagnosis." (Pl.'s Obj. at 7). Plaintiff argues that it would not be possible to be aware of this "injury" until the date of Decedent's death or afterwards. Therefore, Plaintiff asserts that it was error to conflate symptoms with "injury" in this action and accordingly it was error to find that the action accrued when Plaintiff learned of his "symptoms".

      Plaintiff's objection must be rejected. First, it is clear from the excerpted text that the Magistrate Judge did not equate Decedent's symptoms with his "injury". Indeed, the Magistrate Judge reasoned that it was not Decedent's awareness of his symptoms that constituted an "injury" but rather his awareness of the development of his symptoms into brain cancer (or what those symptoms were caused by) that constituted his injury. (ECF No. 15 at 5).

      Arguably, Decedent first became aware of his symptoms in September 2008 when he presented in CBOC complaining of headaches, vision changes and other symptoms. (Exs. 1-6). Defendant did not assert (and the Magistrate Judge did not conclude) that Decedent's knowledge of these symptoms constituted Decedent's knowledge of the existence of his injury or put him on inquiry notice of his injury. (ECF No. 15 at 5, noting "Defendant does not assert that [Decedent's] claim accrued at the time he started showing symptoms."). Rather, the Magistrate Judge concluded that "Plaintiff's claim accrued when Decedent learned that his symptoms *were*

*related* to brain cancer, not when Plaintiff met with a lawyer and an expert" after Decedent's death and accordingly, Decedent's claim accrued "at the latest" in October or November 2009. (ECF No. 15 at 7) (emphasis added). The Magistrate Judge also made note that "even accepting Plaintiff's contention that Decedent's pain and suffering are somehow distinguishable from the cancer itself, Plaintiff was aware of the true nature of this condition and [] the extent of his injury during his time in the VA hospitals and in hospice care." (*Id.*).

The Magistrate Judge's conclusion is supported by both Plaintiff's allegations and Decedent's medical records which evidence that Decedent was advised in August 2009 that he had inoperable brain cancer (Ex. 15); Decedent was aware, and his neurologist noted in his chart, in August 2009 that the MRI ordered in 2008 had never been performed (*Id.*); and there was a biopsy in August 2009 that confirmed Decedent's diagnosis (Ex. 19). Further, in August 2009, Decedent "had an extremely deteriorated mental status where he was rousable only to noxious stimuli and made very few purposeful movements" (Compl. ¶25); he was receiving oral chemotherapy and pallative radiation from September through October (*Id.* ¶26); and he was released into hospice care in October 23, 2009, a mere two months after receiving his diagnosis (*Id.* ¶27). Finally, as the Magistrate Judge observed, Decedent himself was not only on inquiry notice regarding a possible claim against the VA, but he acted upon that inquiry notice when he requested all of his medical records and notes regarding his care at the VA the day after receiving his diagnosis in August 2009. (Ex. 17).

Therefore, Plaintiff's contention that the Magistrate Judge conflated the Decedent's knowledge of his symptoms with the discovery of his "injury", or his implicit argument that the Magistrate Judge ignored his claim that Decedent's injury of increased pain and suffering could

10

be separated from his brain cancer is without basis. The Magistrate Judge correctly held that Decedent was aware of both the existence and the cause of his injury (at the very latest) in November 2009, after he was properly diagnosed and was aware of the severity and the quickly deteriorating nature of his condition.

   2.  Accrual dependent on Medical Expert's Advice

Plaintiff's second and third objections are both based on the argument that "Decedent and his family could not have been reasonably aware of [his] injury until a consultation with a medical expert, which did not occur until after his death." (Obj., at 8, 13). Plaintiff also argues that he could not have been aware of the exact cause of Decedent's injury until sometime after Decedent's death and after meeting with a medical expert. (Obj., 12-13). For these objections, Plaintiff again relies upon the Ninth Circuit decision of *Augustine v. United States*, 704 F.2d 1074 (9th Cir. 1983) and the more recent and binding decision of *Amburgey v. United States*, 733 F.3d 633 (6th Cir. 2013). However, the Magistrate Judge accurately noted that Plaintiff's reliance on *Augustine* is misplaced because its rationale actually supports Defendant's argument, and the present facts are clearly distinguishable from the factual scenario in *Amburgey*. Further, the Magistrate Judge's conclusion is in harmony with both decisions.

Plaintiff relies upon *Augustine* to support his argument that Decedent or his family could not have been able to reasonably determine his injury, *i.e.* the extent to which Decedent's quality of life was affected, until at least the time of his death and Plaintiff was unaware that the VA doctors were responsible for that injury until he met with an attorney and medical expert. In *Augustine*, a plaintiff sought treatment from a dentist to have a dental plate constructed but was informed at that time of a bump on his upper palate. *Augustine*, 704 F.3d at 1076. The factual

record was disputed as to what (if anything) doctors advised the plaintiff at that time, however, two years later the plaintiff was advised by a doctor that the bump was cancerous and surgery was needed. *Id*. at 1076-77, 79. In *Augustine*, the government argued that the plaintiff's claim accrued when he became aware of the bump while the plaintiff argued that the claim did not accrue until he was actually diagnosed with cancer two years later. *Id*. at 1078.

Due to the unresolved factual issues, the Ninth Circuit ultimately remanded the case to the district court to determine whether plaintiff was correctly diagnosed in 1975 or advised of his need for follow up care. *Id*. at 1078-79. Pertinent to this issue, however, the Ninth Circuit did hold that the plaintiff's injury "is not the mere undetected existence of the medical problem at the time the physician failed to diagnose or treat the patient" but rather the "*development* of the problem into a more serious condition which poses greater danger to the patient or which requires more extensive treatment." *Id*. at 1078 (emphasis in original). As the Magistrate Judge pointed out, this rationale actually supports Defendant's argument rather than Plaintiff's position. In *Augustine*, while not determining the exact date of accrual, the court held that the plaintiff's claim would accrue at the time he became aware, or should have become aware, that his pre-existing problem had become a "more serious condition" - namely cancer. *Id*. at 1078-79. *Augustine* would be more apropos if Defendant was asserting that Decedent's claim accrued at some point prior to his cancer diagnosis but after he began presenting with headaches and vision changes. However, in this action, unlike *Augustine*, Defendant argues that the claim accrued at the time of Decedent's cancer diagnosis in August 2009. This position is consistent with the analysis set forth in *Augustine*. In fact, the Plaintiff notes that the issue is "when and if plaintiff discovered or through the exercise of reasonable diligence should have discovered that

12

the failure of his doctors to diagnose, treat, or warn him led to his deteriorating physical condition." (Obj. at 9, quoting *Augustine*, at 1078).

Here, Decedent and his family knew, or at least were on inquiry notice, of a claim based on the failure to diagnose when Decedent became aware that his symptoms had developed into a more "serious condition" at the time he was finally diagnosed with brain cancer. It is reasonable to assume that Decedent and his family became aware or were on "inquiry notice" of such an injury in August 2009 when Decedent received his diagnosis and was aware that his doctors had failed to perform an MRI in 2008 (this failure was also noted in his medical chart in August 2009). Further, it appears that Decedent acted upon this awareness by requesting all of his medical records and notes the day after his proper diagnosis.

Even assuming Decedent's injury was only the increased pain and suffering or shortened life span and that such an injury can be parsed from Decedent's delayed diagnosis of brain cancer, Decedent would have been aware or on inquiry notice of that injury at the latest in October or November 2009. Indeed, by November 2009, Plaintiff was aware that his cancer had spread and was inoperable, he had already had a lengthy hospitalization, he was receiving palliative care and eventually hospice care in his own home. In other words, Decedent was aware or on inquiry notice that his doctor's failure to timely diagnose his brain cancer "led to his deteriorating physical condition." *Augustine*, 704 F.3d at 1078.

Plaintiff next relies on *Amburgey* to support his proposition that he could not have been aware of the cause of Decedent's injury until Plaintiff met with an attorney or medical expert after Decedent's death. Plaintiff's reliance on *Amburgey* is also misplaced. In *Amburgey* the Sixth Circuit held found that a derivative wrongful death claim can accrue for purposes of the

13

FTCA after the decedent's death. 733 F.3d at 641. While this finding appears at first blush to help Plaintiff's claim, the circumstances and facts of the present case are clearly distinguishable from those in *Amburgey*.

In *Amburgey*, the decedent died of an allergic reaction after he was administered an intravenous contrast dye in preparation for a CT scan. *Id*. at 635-36. The decedent's allergy to the contrast dye was flagged on his medical chart. *Id*. At the time of the decedent's death, however, his doctor told his wife that he had died of natural causes and it was not until the autopsy was performed three months later that she learned the true cause of death. *Id*. Consistent with *Kubrick*, the Sixth Circuit explained that in this context a claim accrues pursuant to the FTCA "when the plaintiffs kn[o]w enough about the causes of their respective injuries to put them on inquiry notice of a possible legal claim." *Id*. at 637. Accordingly, the Sixth Circuit held that because the decedent's wife was unaware of any facts that would have put her on inquiry notice of a possible legal claim until she received the autopsy report, the claim did not accrue until that time – some three months after the decedent's death. *Id*. at 638-41.

In the present case, however, Decedent knew enough regarding his care, or lack thereof, to put him on inquiry notice of a possible legal claim. Plaintiff's argument appears to confuse his discovery of Decedent's exact injury with inquiry notice of a possible legal claim. Unlike the *Amburgey* case, where the decedent's wife was unaware of even the cause of decedent's death, here, Decedent was aware of facts in August 2009 or at least by November 2009 that would have put him on inquiry notice of a possible failure to diagnose claim against his doctors.

Further, Plaintiff observes that "importantly, *it was not that Decedent or his family had to seek an expert to let them know the Decedent was not properly treated*, but rather to inform the

14

family that the improper treatment – failure to timely diagnose – caused an injury to the decedent. ... The specific injury to the Decedent was not, and could not have been, known to Decedent or his family until the consultation with an expert." (Obj., at 12-13)(emphasis added). Plaintiff's argument reveals that his argument confuses *Kubrick's* inquiry notice rule with the "discovery rule". The Sixth Circuit has explained that

> *Kubrick* thus applied not a discovery rule (in the sense of discovering the existence of a claim) with request to the accrual of claims under the FTCA, but an inquiry-notice rule. Specifically, a claim accrues when a plaintiff possesses enough information with respect to her injury that, "[h]ad [she] sought out independent legal and [expert] advice at that point, [she] should have been able to determine in the two-year period whether to file an administrative claim."

*Hertz*, 560 F.3d 616, 618 (quoting *McIntyre v. U.S.*, 367 F.3d 38, 53 (1st Cir. 2004).

In the instant case, Decedent or his family was well aware that he "was not properly treated" in August 2009 when he was diagnosed with inoperable brain cancer after his doctors failed to perform an MRI in 2008. Decedent and his family were also aware of his quickly deteriorating physical condition and shortened life span no later than November 2009. Therefore, consistent with inquiry notice rule of *Kubrick*, and applied in *Amburgey* and *Augustine*, Decedent's claim accrued in August 2009 or at the latest in November 2009 - and not at some later time when Plaintiff reviewed the medical record with an expert and was advised of the specific injury that has been pled.

C.     Objection 2

Plaintiff's second objection is that the Magistrate Judge "failed to apply appropriate burden of proof and standard of review to the factual disputes." (ECF No. 16 at 15).

Plaintiff agrees that when a Rule 12(b)(1) motion to dismiss challenges the factual basis for jurisdiction, as the Defendant's current motion to dismiss does, the district court must weigh

evidence and the plaintiff bears the burden of proving jurisdiction exists. (*Id.*, *see also DLX, Inc.*, 381 F.3d at 516). Plaintiff, however, relies upon *Augustine* for the proposition that "[i]n ruling on a jurisdictional motion involving factual issues which also go to the merits, the trial court should employ the standard applicable to a motion for summary judgment." (ECF No. 16 at 16, *quoting Augustine*, 704 F.2d at 1077). Plaintiff asserts that the Magistrate Judge failed to apply this standard and accordingly did not construe genuine issues of material fact in Plaintiff's favor.

      The Court finds Plaintiff's second objection is without merit. The standard set forth in *Augustine*, the non-binding case from the Ninth Circuit discussed at length above, is not applicable to the instant motion. In *Augustine*, the plaintiff alleged that he was informed in late 1975 that he had a bump on his upper left palate but was told that it was not a concern. *Id.* at 1076. Two years later in 1977, the plaintiff was informed that the bump was cancerous. *Id.* The government maintained that the plaintiff's claim accrued in 1975 and offered evidence that the plaintiff was "promptly and adequately informed of the nature and seriousness of his condition and advised to seek further care" at that time. *Id.* at 1079. The plaintiff on the other hand, alleged and offered evidence that in 1975 the dentists did not believe the bump was a concern and failed to refer him to the appropriate specialist even when he specifically requested such a referral. *Id.* Therefore, the plaintiff argued that his claim did not accrue until 1977 when he was ultimately diagnosed with cancer. *Id.* at 1076-77. The Ninth Circuit concluded that the date of accrual was dependent on resolving "when or if" the plaintiff discovered or should have discovered that the failure to diagnose led to his "deteriorating physical condition" which, in turn, was dependent upon whether or not the plaintiff was "adequately informed" of his need for

supplemental care in 1975 "which go[es] to the heart of Augustine's negligence action under FTCA". *Id*. at 1078. In short, the issue of when the plaintiff's claim accrued also implicated whether there was a claim at all.

The facts of the instant action are clearly distinguishable from those in *Augustine*. First, Defendant is not arguing, as the government did in *Augustine*, that the Decedent's claim accrued prior to his correct diagnosis. Second and most importantly, Plaintiff has failed to identify any facts that are in dispute regarding the accrual date of the claim that also "go to the heart" of his wrongful death claim, *i.e.* whether or not Defendant actually failed to timely and properly diagnose Decedent. Because there are no common facts in dispute that implicate the Court's analysis of the accrual date *and* the merits of Plaintiff's underlying wrongful death claim, the standard applied in *Augustine* is not applicable. Therefore, Plaintiff's argument is without merit and the Court denies his objection.

## IV. CONCLUSION

For all the reasons set forth above, the Court will DENY Plaintiff's Objections (ECF No. 16); ADOPT the Report and Recommendation (ECF No. 15); GRANT Defendant's Motion to Dismiss (ECF No. 6); and DISMISS this action with prejudice.

IT IS SO ORDERED.

                                                    s/Paul D. Borman  
                                                    PAUL D. BORMAN  
                                                    UNITED STATES DISTRICT JUDGE

Dated: February 9, 2015

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 9, 2015.

                                        s/Deborah Tofil
                                        Case Manager